# In the United States Court of Federal Claims

No. 14-736C

(Filed: July 13, 2017)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| SNYDER & ASSOCIATES AQUISITIONS LLC, *et al.*, | Takings Without Just Compensation; Takings Claim Not Cognizable When Coextensive With Contract Claim; Actual Authority to Contract; Ratification. |
| Plaintiffs, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Gregory E. Robinson*, Robinson & Robinson, LLP, Irvine, California, for Plaintiffs.

*Phyllis Jo Baunach*, Senior Trial Counsel, *with whom were Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

WHEELER, Judge.

Plaintiffs allege that the Government has taken their businesses and goodwill, as well as money they advanced as part of an Internal Revenue Service sting operation, without just compensation. As a result, they claim the Government owes them over $2.6 million in damages. Plaintiffs' claim largely hinges on the IRS's revocation of an Electronic Filing Identification Number ("EFIN"), which they claim forced them out of the tax preparation business. In addition, they claim that the Government owes them more than $48,000 as a result of loans they advanced to the IRS as part of the sting operation.

The Government has moved for summary judgment pursuant to Rule 56 of the Court of Federal Claims ("RCFC"). Having considered the positions of the parties at oral

argument and in their filings, the Court finds that Plaintiffs have not demonstrated a cognizable property interest in their businesses that was capable of being taken. Furthermore, the Court finds that any right Plaintiffs have to recover the amount of their advanced loans hinges on the existence of a contract between Plaintiffs' owner, Mr. Kerry Snyder, and the Government.   The Court finds that no agent with actual authority to contract on behalf of the Government entered into or ratified a contract with Mr. Snyder. Therefore, Defendant's motion for summary judgment is GRANTED.

<u>Background</u>[1]

Plaintiffs Total Tax Preparation, Inc. (TTP) and Snyder & Associates Aquisitions,[2] LLC (SAA) filed this action to recover $2,608,076.64 for the Government's alleged taking of their businesses and goodwill, as well as other unpaid amounts and fees of $48,760 for their breach of contract claims.  Compl. ¶¶ 1–3, 35, 37, 44, Dkt. No. 1.  TTP was a tax return preparation business.  Pl. App. at 188.  As an authorized e-file provider, TTP held an EFIN, which is required for filing tax returns electronically for clients. <u>Id.</u> at 188, 199. SAA provided Refund Anticipation Loans ("RALs") to taxpayers who had filed income tax returns.  <u>Id.</u> at 188.  The taxpayer's tax refund would then repay SAA for the RALs. <u>Id.</u> at 195.  The two businesses acted symbiotically: TTP would prepare tax returns, then refer taxpayers to SAA if they desired RALs.  <u>Id.</u> at 188.  Kerry Snyder was the owner of both TTP and SAA.  <u>Id.</u>

On January 5, 2010, Nancy Hilton began preparing tax returns for TTP clients as an independent contractor.  <u>See</u> Def. App. at 187–92.  She utilized TTP's office space, used TTP's EFIN to file tax returns, and referred clients to SAA for RALs.  <u>Id.</u> at 192; Pl. App. at 189.  On January 29, 2010, in a meeting with the IRS, Ms. Hilton admitted that she had been filing fraudulent tax returns in previous years, and that her co-conspirators continued to bring her names and social security numbers to allow her to prepare and file false returns during 2010. Def. App. at 145.  At the end of the meeting, Ms. Hilton agreed to let the IRS monitor "her conversations with other people that may be also involved in fraud."  <u>Id.</u> at 100 & 145.

On February 23, 2010, a clerk at a check-cashing agency identified a fraudulent RAL check and confiscated it.  <u>Id.</u> at 151–56.  The actual payee whose identity had been

---

[1]  The Court takes the facts in this Background section from the appendices Defendant and Plaintiffs have filed in support of their memoranda, which may be found at Docket Numbers 33-1 and 36-1, respectively. The Court will refer to Plaintiffs' and Defendant's appendices herein as "Pl. App." and "Def. App." Additionally, the Court will refer to Defendant's motion for summary judgment (Dkt. No. 33), Plaintiffs' response in opposition to defendant's motion (Dkt. No. 36), and Defendant's reply in support of its motion (Dkt. No. 37) as "Mot.," "Opp'n," and "Reply," respectively.

[2]  The Court notes that the word "Aquisitions" in Plaintiff SAA's name is not spelled in the conventional way.  Nevertheless, the Court will defer to Plaintiffs' choice of spelling throughout this opinion.

stolen notified Mr. Snyder that one of Ms. Hilton's co-conspirators had tried to cash an RAL check issued by SAA on a return prepared by Hilton, using fake identification. Id. Mr. Snyder asked the Bank to put a hold on the checks and immediately contacted Ms. Hilton. Pl. App. at 190. After Mr. Snyder called and confronted Ms. Hilton about the fraudulent checks, Ms. Hilton admitted that she was working with the IRS in an undercover sting operation, and that one of the special agents (SAs) involved in that investigation, SA Daniels, had given her permission to disclose the operation. Id.

SA Daniels quickly contacted Mr. Snyder and asked him to allow the checks to clear so there would not be any interference with the federal criminal investigation. Id. Mr. Snyder alleges that SA Daniels reassured and promised him that the IRS would cover all the outstanding RALs, including both the stopped checks and the outstanding RALs that had been issued but not yet repaid through IRS refunds. Id. at 191.

According to the IRS's internal rules, when an unanticipated expense occurs without pre-authorization, the person who incurred it elevates it to management for approval of coverage. Pl. App. at 20–21. On April 23, 2010, with the support of SA Remoun Karlous, SA Daniels made a recommendation to the SA in charge of the LA Field Office, Leslie Demarco, that they should "cover any lost refunds associated with RAL checks cashed" between February 23 and 24, 2010. Id. at 41–42, 89, 92. However, the Los Angeles field office was not able to use its operating budget to pay Mr. Snyder. Id. at 35. Furthermore, the IRS headquarters refused to issue payments for the RAL checks. Id. at 22–23, 27–29, 92, 98.

After Mr. Snyder agreed to cooperate with the IRS, Plaintiffs' bank closed the accounts for both TTP and SAA because the IRS had failed to tell the bank that Plaintiffs had been assisting with the IRS's sting operation. Id. at 193. Plaintiffs kept the bank accounts open for a period of time at a cost of more than $12,700 in bank fees and attorney's fees. Id. By December 2010, SAA asked SA Daniels several times about the IRS's payment promises, but received neither written payment assurances nor refunds on the RALs SAA had extended. Id. at 193, 80, 87, 101, 104.

After Mr. Snyder made his payment requests, SA Daniels recommended terminating TTP's EFIN on December 16, 2010. Def. App. at 169–71. The IRS subsequently notified TTP that its EFIN had been revoked via an e-filing expulsion letter dated December 30, 2010. Id. at 172. After TTP appealed the expulsion, the IRS reinstated TTP's EFIN. Pl. App. at 195. Mr. Snyder alleges that the vast majority of TTP and SAA's customer base had looked elsewhere for their tax preparation needs by the time the IRS reinstated TTP's EFIN, and both SAA and TTP were forced to cease operations. Id.

TTP and SAA filed this action on August 13, 2014, alleging that the Government had unconstitutionally taken their businesses and goodwill, as well as approximately $35,990 in unpaid RALs and $12,770 in fees and expenses paid to keep their bank accounts

open.  Compl. ¶ 35.  They also alleged that the Government breached an express or implied-in-fact contract with them under which the Government promised to pay for all the losses associated with the RALs funded by SAA in connection with the IRS's investigation.  Id. ¶ 40.  The Government then moved to dismiss this case under RCFC 12(b)(6) on two grounds: (1) that the EFIN or the privilege to participate in IRS e-filings is not a legally cognizable property interest under the Fifth Amendment; and (2) that TTP and SAA had no contractual right to compensation.  See Def. Mot. to Dismiss, Dkt. No. 12.  On May 28, 2015, the Court denied the Government's motion, finding that Plaintiffs' allegations stated plausible claims for relief.  See Order, Dkt. No. 19.[3]  After completing discovery, the Government has now moved for summary judgment, alleging that Plaintiffs had no legally cognizable property interests capable of being taken.  They further claim that Plaintiffs did not enter into a contract with a Government official who had the actual authority to bind the Government in contract.

## Discussion

### A.   Standard of Review

A party is entitled to summary judgment under RCFC 56(a) if the party can show "that there is no genuine dispute as to any material fact and the [party] is entitled to judgment as a matter of law."  A material fact "makes a difference in the result of a case under the governing law."  Gazpromneft-Aero Kyrgyzstan LLC v. United States, 132 Fed. Cl. 202, 208 (2017) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party bears the burden of establishing that "no genuine issue of material fact exists."  Pellegrini v. United States, 132 Fed. Cl. 64, 70 (2017) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  Therefore, the Court must construe all facts "in the light most favorable to" the nonmovant.  Id. (citation omitted).  A court may not grant summary judgment if a reasonable factfinder could rule for the nonmoving party. Gazpromneft, 132 Fed. Cl. at 209 (citing Anderson, 477 U.S. at 248).  Still, a court may grant summary judgment if evidence pertaining to a material fact is "merely colorable" or is "not significantly probative."  Anderson, 477 U.S. at 249–50.  To that end, a mere "scintilla of evidence" will not do.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596 (1993).  Finally, the Court may also dispose of "matters of law" on a motion for summary judgment.  Santa Fe Pac. R. Co. v. United States, 294 F.3d 1336, 1340 (Fed. Cir. 2002).

---

[3]  Plaintiffs have filed a companion suit in the U.S. District Court for the Central District of California.  See Compl., Dkt. No. 1 (filed Aug. 22, 2014), Snyder & Assoc. Aquisitions LLC v. United States, No. 8:14-cv-01350-CJC-RNB.  In that suit, Plaintiffs brought claims under the Federal Tort Claims Act, as well as abuse of process, conversion, and negligence claims.  Id. ¶¶ 39–65.  The District Court granted the Government's motion to dismiss, but the U.S. Court of Appeals for the Ninth Circuit reversed that decision.  See Snyder & Assoc. Aquisitions LLC v. United States, 859 F.3d 1152 (9th Cir. 2017).  Proceedings in that case are ongoing.

B.     The Government is Entitled to Summary Judgment on Plaintiffs' Takings
       Claims.

The federal government may not take private property for public use without just compensation.  U.S. Const. amend. V.  When a party alleges that his property has been taken without compensation, the Court applies a two-part test.  It first determines whether a plaintiff has a cognizable property interest.  Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377 (Fed. Cir. 2008).  If the plaintiff possesses such an interest, the Court then must "determine whether the government action at issue amounted to a compensable taking of that property interest."  Id. at 1378 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004)).  However, if the plaintiff does not show the existence of a cognizable property interest, "the court's task is at an end."  Am. Pelagic Fishing, 379 F.3d at 1372.

Here, the main thrust of the Government's argument is two-pronged.  First, the Government argues that Plaintiffs have not shown a cognizable property interest in their businesses capable of being taken.  Second, the Government maintains that any right Plaintiffs have to the $48,760 in unpaid RAL money lies in contract, and thus cannot form the basis of a takings claim.  The Court agrees on both counts.

1.     Plaintiffs Have not Shown a Cognizable Property Interest in Their
       Ability to Participate in the IRS E-File Program.

Plaintiffs are businesses.  Therefore, they obviously possess cognizable property interests in their businesses, as well as the goodwill attached to those businesses.  However, Plaintiffs' complaint does not allege, nor does the record show, a taking of the businesses themselves.  The Government did not in any way deny Plaintiffs the use of their businesses during the sting operation.  Rather, Plaintiffs argue that the Government impermissibly took their EFIN, thereby depriving them of a central means of operating their businesses.  Without the EFIN, Plaintiffs could not participate in the IRS e-filing program.  Therefore, their businesses ceased to function as customers went elsewhere, and the businesses lost their goodwill.  So, it is plain that Plaintiffs regard the taking of their EFIN as a taking of their businesses and goodwill.

The problem is that Plaintiffs had no cognizable property interest in their EFIN in the first place.  When a party receives a permit to engage in an activity "which, from the start, is subject to pervasive Government control," no cognizable property interest capable of supporting a takings claim ever arises in that permit.  Mitchell Arms v. United States, 7 F.3d 212, 216 (Fed. Cir. 1993) (citation omitted).  Under such circumstances, a citizen has no "right to *exclude*" the Government from its business dealings; therefore, no property interest can attach to the Government's grant of permission to conduct business.  Id. (emphasis in original).  For example, in Mitchell Arms, the Government (through ATF) suspended a permit that allowed the plaintiff to import and sell assault rifles.  Id. at 217.

The plaintiff argued that this constituted a taking, as its business depended on revenues from the import and sale of assault rifles. Id. at 214–15. The Federal Circuit found that no property interest existed in the permits. Id. The Court reasoned that all ATF had "taken" was "the ability to realize an expectation in the ultimate market disposition of the rifles." Id. at 217. The plaintiff's "ability to import the rifles and sell them in the United States was at all times entirely subject to the exercise of ATF's regulatory power." Id. Therefore, ATF's revocation of the permits was simply a permissible exercise of that power, and no property interest ever arose in the permits. Id.

This case directly parallels Mitchell Arms. Citizens have no independent right to receive EFINs and participate in the IRS e-filing program.[4] Rather, the IRS assigns EFINs in the same way the ATF assigned permits to import and sell assault rifles in Mitchell Arms. Tax preparation is an exhaustively regulated area over which the IRS reigns supreme, and filers participate in the e-filing program only with the IRS's permission. The IRS can revoke that permission at any time, just as ATF can revoke firearm import and sale permits. Therefore, no property interest attached to Plaintiffs' ability to participate in the IRS e-filing program, and neither their businesses nor the goodwill attached to those businesses were taken when the IRS revoked that ability.[5]

> 2.  The Government has not Taken Plaintiffs' Ability to Enforce Their Contract Right to Unpaid RAL Amounts.

If a plaintiff claims he is owed something to which he also claims a contractual right, he cannot also allege a takings claim because he is not alleging that the Government has "taken" his contract remedy. See ConocoPhillips v. United States, 73 Fed. Cl. 46, 55 (2006). Under such circumstances, the plaintiff is claiming he entered into a contract with the Government that the Government subsequently breached, leaving the plaintiff with contract damages. The amount of those damages is also the property the plaintiff claims was taken. In other words, "[t]he property rights allegedly taken were the contractual rights themselves, not a separately existing property interest." Westfed Holdings, Inc. v. United States, 52 Fed. Cl. 135, 152 (2002). Therefore, the plaintiff's remedy lies in contract, and he cannot pursue a takings claim to recover his alleged contract damages. Id.

---

[4]  Moreover, two District Courts have found that no property interest attaches to a party's ability to participate in the IRS e-filing program. See Forehand v. IRS, 877 F. Supp. 592, 597 (M.D. Ala. 1995); Sabat v. IRS, No. CIV A. 99-1751, 2000 WL 1202086, at *4 (W.D. Pa. Mar. 16, 2000).

[5]  Plaintiffs argue that the doctrine of unconstitutional conditions applies here, maintaining that the Government could not demand they drop claims for RAL reimbursement in return for their continued ability to participate in the IRS e-filing program. This argument (a) finds no support in the record, and (b) is misplaced, as the Nollan/Dolan test upon which it is predicated "is meant to apply only in cases involving land use exactions." Starr Int'l Co., Inc. v. United States, 106 Fed. Cl. 50, 82 (2012).

Here, Plaintiffs allege they are owed $48,760 for unpaid RALs and costs associated with keeping their bank accounts open. The basis for their claim is an alleged contract between them and the Government, as shown below. If (as the Court finds) a contract never existed, then Plaintiffs' right to compensation under that contract also never existed. Therefore, Plaintiffs cannot assert a takings claim for $48,760 because that claim rises or falls with their contract claim.

In sum, the Court finds that Plaintiffs have not shown that the Government impermissibly took their property without just compensation. Therefore, the Government is entitled to summary judgment on Plaintiffs' takings claims.

C.    The Government is Entitled to Summary Judgment on Plaintiffs'
       Contract Claims.

To bring a valid contract claim against the Government, a "Plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon." See Villars v. United States, 126 Fed. Cl. 626, 633 (2016). Here, the parties' dispute centers on whether any of the government agents with which Mr. Snyder interacted had the actual authority to bind the government in contract. Therefore, for purposes of this analysis, the Court assumes *arguendo* that Mr. Daniels made a promise to pay Plaintiffs.

Government agents must have actual authority to bind the Government in contract— they do not have apparent authority. See Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1344–45 (Fed. Cir. 2007). Private parties bear the risk that Government agents may not have actual authority to bind the Government, even when the agents themselves believe they have such authority. See Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (citing Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947)). An agent's actual authority may be either express or implied. Villars, 126 Fed. Cl. at 633. Finally, actual authority may arise after an agent enters into an unauthorized contract if the contract is "ratified at the institutional level." Villars, 126 Fed. Cl. at 633.

1.    SA Daniels did not Have Actual Authority to Bind the United States
       in Contract.

Mr. Snyder only dealt directly with SA Daniels; therefore, if SA Daniels did not act with actual authority, then the Government is not bound by any agreements he made with Mr. Snyder. See, e.g., Compl. ¶¶ 17–18 (detailing Mr. Synder's interactions with SA Daniels). First, SA Daniels did not have express actual authority. A government official acts with express actual authority "only when the Constitution, a statute, or a regulation

grants it to that agent in unambiguous terms." <u>Villars v. United States</u>, 126 Fed. Cl. 626, 635 (2016) (quoting <u>Jumah v. United States</u>, 90 Fed. Cl. 603, 612 (2009)).  There is no authority in the Constitution, a statute, or a regulation that grants SA Daniels the authority to bind the United States in a contract that obligates the Government to compensate Plaintiffs for the unpaid RALs.  Thus, SA Daniels did not act with express actual authority.

Second, SA Daniels did not act with implied actual authority.  A government official acts with implied actual authority if this authority is "an integral part of the duties assigned to [the G]overnment employee." <u>Salles v. United States</u>, 156 F.3d 1383, 1384 (Fed. Cir. 1998) (citation omitted).  Such authority is integral to an employee's duties "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." <u>SGS–92–X003 v. United States</u>, 74 Fed. Cl. 637, 652 (2007) (quoting <u>H. Landau & Co. v. United States</u>, 866 F.2d 322, 324 (1989)).  Plaintiffs argue that incurring expenses and making payment promises is integral to SA Daniels' IRS duties.  <u>See</u> Opp'n at 37–38.  Although agents may incur expenses during investigations, the IRS expressly states that it will not cover investigation-related expenses without preauthorization. Pl. App. at 20–21.  Instead, agents like SA Daniels must submit requests for investigation-related reimbursement.  Def. App. at 103.  The IRS may or may not approve such requests.  This IRS rule shows that entering into contracts on the Government's behalf cannot be an integral part of an IRS special agent's duties, as any payments under those contracts would need to be authorized by an IRS official with actual authority.  Therefore, SA Daniels did not act with implied actual authority.[6]

### 2.   The Government did not Ratify any Agreement Between Mr. Snyder and SA Daniels.

"Ratification may take place at the individual or institutional level." <u>Villars</u>, 126 Fed. Cl. at 633.  While individual and institutional ratification differ slightly, both require (1) a government official in a supervisory position who has (2) actual authority to contract and (3) knowledge of a subordinate's unauthorized contract.  <u>See id.</u>  Plaintiffs argue at length that SA Daniels's supervisors had knowledge of his alleged repayment promises.  <u>See</u> Opp'n at 38–39.  Specifically, they argue that SA Daniels's superior, Leslie Demarco (the Agent in Charge of the Los Angeles office), and the Chief of Criminal Investigation knew of SA Daniels's unauthorized contract.  <u>Id.</u>

---

[6]  Plaintiffs allege that SA Daniels's supervisor, SA Karlous, had implied actual authority to contract that he subsequently delegated to SA Daniels.  Opp'n at 38.  However, because SA Karlous is a Special Agent, the same rank as SA Daniels, SA Karlous also cannot have had the implied actual authority to contract. Therefore, there was no authority to delegate.

First, there is no evidence in the record that the Chief of Criminal Investigation knew of the unauthorized contract. All arguments Plaintiffs make to the contrary are speculative, and the Court may not presume such bare-bones allegations to be true at the summary judgment stage. See Anderson, 477 U.S. at 249. Second, knowledge is only one ratification requirement. To be capable of ratifying an agreement, supervisors must themselves have actual authority to contract.

Ms. DeMarco did not have such authority. The IRS regulations that govern procurement authority incorporate the Federal Acquisition Regulation ("FAR"). See T.D. 12-11, Authorities of the Senior Procurement Executive (Feb. 3, 2017), available at https://www.treasury.gov/about/role-of-treasury/orders-directives/pages/td12-11.aspx. FAR § 1.602–3 states that an official may ratify an agreement only if he "has authority to enter into a contractual commitment." Leslie DeMarco did not have contracting authority, but merely had authority to authorize or reject certain types of confidential expenditures up to $10,000. See IRS Delegation Order 9-10, Def. App. at 89. This authority is not equivalent to contracting authority. Rather, as IRS Delegation Order 1-14 makes clear, contracting authority is delegated only to the Director of Procurement (and any designees the Director may name). Id. There is no evidence in the record that the Director of Procurement or any of the Director's designees knew of SA Daniels's payment promises. Therefore, no one with actual authority to contract knew of these promises, and no ratification occurred.

This result may at first blush seem unjust. After all, Plaintiffs lost their RAL money while rendering services to the Government, and the Government benefitted from their services. However, policy considerations favor this exacting approach to ratification. "The United States Government employs over 3 million civilian employees. Clearly, federal expenditures would be wholly uncontrollable if Government employees could, of their own volition, enter into contracts obligating the United States." Gary v. United States, 67 Fed. Cl. 202, 217 (2005) (citation omitted). Therefore, low-ranking Government employees cannot bind the Government simply by accepting services from private parties. Id. Furthermore, Mr. Snyder could have rejected SA Daniels's request to honor any RALs made to suspects during the Government's investigation. He chose not to do so. In the end, Mr. Snyder's unauthorized contract was not ratified because no supervisor with actual authority knew of SA Daniels's promise to pay.

<u>Conclusion</u>

The Government did not take Plaintiffs' businesses or goodwill, and it did not take Plaintiffs' money because any right Plaintiffs had to that money is coextensive with Plaintiffs' contractual rights. The Court also finds that no contract existed between

Plaintiffs and the Government.   Therefore, the Government's motion for summary judgment is GRANTED.  The Clerk is directed to dismiss this case.  No costs.

    IT IS SO ORDERED.

                                                    s/ Thomas C. Wheeler
                                                    THOMAS C. WHEELER
                                                    Judge